568 A.2d 971

**Lisa D. OCHS, Appellee,**

v.

**ERIE INSURANCE EXCHANGE, Appellant,**

v.

**PENNSYLVANIA CATASTROPHIC LOSS TRUST FUND, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 12, 1989.

Filed Jan. 19, 1990.

Herbert N. Rosenberg, Pittsburgh, for appellant.

Arthur Selikoff, Harrisburg, for Pennsylvania Catastrophic Loss, appellee.

Neil R. Rosen, Pittsburgh, for Ochs, appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge:

The issue in this appeal is whether an insurance company which has insured an injured plaintiff under two policies, one issued pursuant to the Motor Vehicle Financial Responsibility Law and the other pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Law, can elect to pay benefits only under the former policy which has a limit of $100,000.00 and thereby avoid liability for monetarily unlimited medical expenses under the No-fault policy.

On July 6, 1985, Lisa D. Ochs, while riding as a passenger in a vehicle, was involved in an accident which caused fractures of her thoracic and lumbar vertebrae (T–12 to L–1). She now suffers paraplegia and is permanently dis-

abled. At the time of the accident, Ms. Ochs resided in Clarion, Pennsylvania, with her father and brother. She was not the named insured in any policy of automobile insurance at the time of the accident, but was an insured under a policy of automobile insurance which had been issued to her father by Erie Insurance Exchange (Erie) pursuant to the Motor Vehicle Financial Responsibility Law of February 12, 1984, P.L. 26, No. 11, 75 Pa.C.S. §§ 1701 et seq., effective October 1, 1984 (hereinafter MVFRA). This policy provided for the payment of medical benefits in amounts not to exceed $100,000.00. Ochs was also an "eligible person" under a policy of insurance which had been issued by Erie to her brother. This policy had been issued under the prior No-fault Motor Vehicle Insurance Act of July 19, 1974 [1] and had neither been renewed nor reissued after the effective date of MVFRA. Following the accident, Erie paid to Ochs lost income in the amount of $8,504.10 and medical benefits in the amount of $100,000.00. Thereafter, Erie refused to reimburse Ochs for additional medical expenses, contending that it had paid to the limit of its liability under the MVFRA policy and that the Catastrophic Loss Trust Fund (CAT Fund) [2] was responsible to reimburse her for additional medical expenses. When Ochs made a claim for CAT fund benefits, however, her claim was denied. A claim under the No-fault provisions of the policy which had been issued to Ochs' brother was also denied by Erie, which contended that it had no duty to pay benefits until the CAT fund had paid medical benefits up to a million dollars. [3]

Ochs commenced the instant action against Erie, and Erie caused the Pennsylvania Catastrophic Loss Trust Fund (CAT Fund) to be joined as an additional defendant. Based

1. The No-fault Act was repealed by MVFRA, effective October 1, 1984.

2. The CAT Fund provisions of MVFRA were repealed by the Act of Dec. 12, 1988, P.L. 1120, No. 144.

3. The CAT Fund provisions of MVFRA contain lifetime limits of one million dollars and annual limits of $50,000.00. See: 75 Pa.C.S. § 1766. Erie agrees that it is responsible under its No-fault policy for medical benefits in excess of these CAT Fund/MVFRA limits.

upon stipulated facts, the trial court held that Erie was liable for plaintiff's medical expenses under its No-fault policy. A motion for post-trial relief was denied, and Erie appealed.

Section 11 of the Motor Vehicle Financial Responsibility Law provides that the Act "applies to insurance policies issued or renewed on or after the effective date of this act." [4] Therefore, the No-fault policy, which had been issued by Erie to plaintiff's brother prior to October 1, 1984 and not renewed prior to the accident, remained in effect and subject to the provisions of the No-fault Act. See: *Soles v. Pennsylvania Mutual Insurance Co.*, 372 Pa.Super. 605, 608, 539 A.2d 1360, 1362 (1988), *allocatur granted*, 521 Pa. 622, 557 A.2d 725 (1989); *Borysowski v. State Farm Mutual Insurance Co.*, 368 Pa.Super. 399, 407, 534 A.2d 496, 500 (1987). Under the provisions of the No-fault Act, an insurer's liability for medical and rehabilitation expenses is unlimited. See: 40 P.S. §§ 1009.103 and 1009.-202.

Under the provisions of MVFRA, an automobile insurance policy may contain monetary limits. An insurer must provide medical benefits in the amount of at least $10,000.00 (75 Pa.C.S. § 1711) and must make available for purchase first party benefits which include up to $100,000.00 in medical benefits (75 Pa.C.S. § 1715). The CAT Fund was directed to provide catastrophic loss benefits for the payment of expenses for medical treatment and rehabilitative services in excess of $100,000.00. See: 75 Pa.C.S. § 1766(a), now repealed. The CAT Fund provisions of MVFRA have no effect on the obligations of an insurer under a policy issued pursuant to the No-fault Law. *Employee Benefit Plan of Harleysville Mutual Ins. Co. v. Grode*, 112 Pa.Cmwlth. 470, 535 A.2d 739 (1988). There is no coordination between the two; CAT Fund benefits can come into effect only after a no-fault policy has expired. *Id.* at 475, 535 A.2d at 742.

4. See: 75 Pa.C.S. § 1701, Historical Note.

When plaintiff was injured in the summer of 1985, she was insured under both policies which had been issued by Erie. Her rights under these policies were contractual. Neither the language of the policies, the provisions of MVFRA, nor the language of the No-fault law established a priority for the payment of benefits pursuant to the policies. Therefore, the plaintiff could properly claim benefits under the No-fault policy which contained no monetary limit on the amount of medical benefits which she could receive. Erie could not require that she proceed solely under the MVFRA policy which had a limit of $100,000.00 on the amount of medical benefits which could be recovered.

It is clear, therefore, that Erie is liable to the plaintiff under the terms of its No-fault policy for medical benefits in an amount which is not monetarily limited. It follows that the CAT Fund is not liable to the plaintiff for medical expenses incurred in excess of $100,000.00, because, as we have seen, it does not come into effect to relieve or limit the obligations of an insurer whose liability is determined according to a policy issued under the No-fault law.

Because Erie is liable for benefits under the No-fault policy issued to plaintiff's brother, the CAT Fund is also relieved of liability by the express language of the statute which created it. At 75 Pa.C.S. § 1761, now repealed, the legislature stated: "Catastrophic loss benefits shall not duplicate any other payments for medical treatment or rehabilitation services."

Appellant argues that the CAT Fund is liable because Ms. Ochs falls within the definition of "eligible claimant" in section 1761 of MVFRA. Specifically this section provides:

Otherwise eligible claimants shall not be disqualified from participating in or receiving benefits from the Catastrophic Loss Trust Fund for injuries suffered after the effective date of this subchapter but prior to their first registration renewal after the effective date of this subchapter.

*Id.* Appellant argues that "the use of the phrase 'first registration renewal' implies that [where] an existing and valid no-fault policy was in force on October 1, 1984" a claimant cannot be disqualified from participation in the CAT Fund. We disagree. The reference to registration renewal in the definition of eligible claimant does not refer to the existence of a no-fault policy. It refers, rather, to the requirement of section 1762 that each motor vehicle registrant pay a charge which provides revenue for the CAT Fund. Therefore, we agree with the Commonwealth Court which, in *Employee Benefit Plan of Harleysville Mutual Insurance Co. v. Grode, supra,* said the following:

> As already mentioned, Section 11 of the Financial Responsibility Law renders the Law applicable to all insurance policies issued or renewed after October 1, 1984, and here the polic[y] unquestionably [was] not issued or renewed after that date. We believe that the reference to the five dollar funding fee in the definition of "eligible claimant" recognized that the date for issuance of insurance policies did not necessarily coincide with the date an insured's automobile registration expired. The situation therefore could arise where an insured would be covered by a policy issued or renewed after October 1, 1984 and have an accident before the then current registration expired. To foreclose any argument that the insured was not eligible for CAT Fund benefits, the Legislature explicitly provided for this possibility in its definition of "eligible claimant." While appellants argue that the Legislature could have specifically excluded those covered by a no-fault insurance policy if that was its intent, we believe the Legislature addressed this problem in Section 11 by stating that the provisions of the Financial Responsibility Law applied only to insurance policies issued or renewed after October 1, 1984, thereby leaving in force any no-fault policies until those policies expired.

*Id.* at 475, 535 A.2d at 741–742.

Appellant also relies on Section 1766(c), which provides:

(c) Effect of other benefits.—Except for workers' compensation, catastrophic loss benefits paid or payable by the fund shall be primary to any other available source of accident or health benefits including any program, group contract or other private or public source of benefits unless the law authorizing or providing those benefits makes the benefits primary to the benefits provided under this subchapter.

75 Pa.C.S. § 1766. Appellant contends that this section specifies only worker's compensation benefits as primary to CAT Fund benefits and that nothing in the No-fault Act suggests that No-fault benefits should be primary to CAT Fund benefits. Appellant argues, therefore, that the CAT Fund is primarily liable for plaintiff's additional losses. As we have already observed, however, the No-fault policy is not subject to the provisions of the MVFRA. There is no coordination between MVFRA and the No-fault Law. Therefore section 1766(c) of MVFRA cannot be read to prioritize CAT Fund benefits and No-fault benefits.

We conclude, therefore, that Erie could not transfer its liability for No-fault medical benefits to the CAT Fund by the expediency of labelling medical payments as MVFRA benefits under a separate policy of insurance which provided lesser benefits. MVFRA was not liable for medical benefits so long as plaintiff's medical expenses were being paid under and pursuant to Erie's No-fault policy.

Finally, the trial court did not err when it awarded interest at the rate of eighteen (18%) percent on overdue payments. Authority for such interest appears in the No-fault Law, 40 P.S. § 1009.106(a)(2), as follows:

"(2) No-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained.... Overdue payments bear interest at the rate of eighteen per cent (18%) per annum.

Because these issues were correctly decided by the trial court, its adjudication is affirmed.