## Stratton v. Allstate Insurance Co.

*J. Michael Sheridan,* for plaintiff.
*J. Keath Fetter,* for defendant.

SEMERARO, *J.,* April 11, 1990 — On October 1, 1987, the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., went

into effect and the No-fault Act was repealed. However, the MVFRL was made applicable only to insurance policies issued or renewed on or after October 1, 1984.

On October 9, 1984, at the request of the named insured, a 1985 Escort was added to the existing policy issued September 8, 1984 and until March 8, 1985 as an additional insured vehicle. The same coverages applicable to the 1984 Celebrity were extended to the 1985 Escort. The named insured did not ask for any coverage changes with respect to the second vehicle, nor did he request that a separate policy be issued for the second vehicle. Neither plaintiff nor the named insured ever paid any premium for underinsured motorist coverage on either vehicle covered under the policy.

On December 9, 1984, plaintiff sustained injuries while riding as a passenger in a vehicle being operated by Jeffrey Scott Brown. Following this accident, plaintiff applied for and received from Allstate personal injury protection benefits pursuant to the coordination of benefits provision of the policy and the No-fault Act. Plaintiff also made a third-party tort claim against Mr. Brown and settled that claim for the limits for Brown's liability insurance coverage, $50,000. He then claimed underinsured motorist benefits from Allstate, and Allstate has denied that claim.

The insurance policy upon which plaintiff's claim for underinsured motorist benefits is based was issued on September 8, 1984 pursuant to the No-fault Act. The MVFRL became effective on October 1, 1984, and the No-fault Act was repealed at the same time. However, section 9 of the Act of February 12, 1984, P.L. 26, no. 11, the legislation pertaining to the enactment of the MVFRL, expressly provides: ''This act applies to insurance policies issued or renewed on or after the effective date of

this act [October 1, 1984]." See Historical Note to 75 Pa.C.S. §1701.

The parties each filed motions for summary judgment which we reviewed, along with the entire record, and we conclude there is no genuine issue of material fact. In granting defendant's motion we deny plaintiff's motion and enter judgment in favor of defendant as a matter of law with this accompanying opinion.

## FINDINGS OF FACT

(1) Plaintiff, John F. Stratton, initiated this declaratory-judgment action by filing a complaint against Allstate on October 11, 1988, seeking a declaration that a policy of automobile insurance issued by defendant provided underinsured motorist coverage in the amount of $50,000.

(2) On September 8, 1984, Allstate issued automobile insurance policy no. 008265897 to plaintiff's father, also named John F. Stratton, as the named insured, in plaintiff's answer to interrogatory no. 1. (See defendant's brief, exhibit A.)

(3) A true and correct copy of policy is attached to defendant's brief and marked exhibit B.

(4) The policy term was September 8, 1984 to March 8, 1985. (See Paul Mattus deposition attached to defendant's brief, marked exhibit C.)

(5) The policy was issued under and pursuant to the provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq. (Allstate's new matter, paragraph 17 and plaintiff's reply thereto.)

(6) The policy as issued on September 8, 1984 insured one vehicle only, a 1984 Celebrity. (Answer to interrogatory no. 4. See exhibit A, defendant's brief aforesaid.)

(7) The policy provided, among other coverages, coverage for bodily injury liability in the amount of $50,000 per person and $100,000 per occurrence, personal injury protection coverage pursuant to the No-fault Act, and uninsured motorist coverage in the amount of $15,000 per person and $30,000 per accident. The policy did not provide any underinsured motorist coverage. (Allstate's new matter, paragraphs 18 and 19 and plaintiff's reply thereto.)

(8) Effective October 9, 1984, at the request of the named insured, a 1985 Escort was added to the policy as an additional insured vehicle, and the same coverages applicable to the 1984 Celebrity were extended to the 1985 Escort, including the bodily injury liability coverage, the personal injury protection coverage pursuant to the No-fault Act, and uninsured motorist coverage. (Attached to defendant's brief and marked exhibit D.)

(9) The named insured did not request any changes in the coverages for either vehicle, nor did he ask that a separate policy be issued for the second vehicle. (Attached to defendant's brief and marked exhibit C.)

(10) At the time of the issuance of the policy on September 8, 1984, the named insured elected to make his health insurance coverage primary to his personal injury protection coverage, as permitted by the No-fault Act, 40 P.S. §1009.203, in return for a reduction in premium. This same "coordination of benefits" was extended to the 1985 Escort when it was added to the policy. (Deposition of Paul G. Mattus, N.T. 16-7. See exhibit C attached to defendant's brief.)

(11) On December 9, 1984, plaintiff sustained injuries while riding as a passenger in a vehicle being driven by Jeffrey Scott Brown.

(12) Following this accident, plaintiff applied for and received from Allstate personal injury protec-

164

tion benefits pursuant to the policy and the No-fault Act. (Allstate's new matter, paragraph 24, and plaintiff's reply thereto; plaintiff's answers to interrogatories nos. 17 and 19.)

(13) Following the accident of December 9, 1984, plaintiff made a third-party tort claim against Jeffrey Scott Brown and settled that claim for the limits of Brown's liability insurance coverage, $50,000. (Plaintiff's answers to interrogatories nos. 20 and 21.)

(14) Neither plaintiff nor the named insured paid any premium for underinsured motorist coverage on either vehicle covered under the policy. (Allstate's new matter, paragraph 23, and plaintiff's reply thereto.)

(15) The policy issued by defendant to plaintiff's father was not issued or renewed between October 1, 1984 and December 9, 1984, the date of plaintiff's accident.

(16) The policy was issued prior to October 1, 1984, and no underinsured motorist coverage was provided by the policy or otherwise required by applicable law.

## DISCUSSION

Plaintiff, John F. Stratton, initiated this declaratory-judgment action by filing a complaint against defendant, Allstate Insurance Company, on October 11, 1988 seeking a declaration that a policy of automobile insurance issued by Allstate provided underinsured motorist coverage in the amount of $50,000.

On September 8, 1984, Allstate issued automobile insurance policy number 008265897 to plaintiff's father, also named John F. Stratton, as the named insured. The policy term was from September 8, 1984 to March 8, 1985, the next renewal date. The

policy was issued pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq., which was then in effect in Pennsylvania. As issued on September 8, 1984, the policy insured one vehicle only, a 1984 Celebrity. It provided, among other coverages, coverage for bodily injury liability in the amount of $50,000 per person and $100,000 per occurrence, personal injury protection coverage pursuant to the No-fault Act, and uninsured motorist coverage in the amount of $15,000 per person and $30,000 per accident. The policy did not provide any underinsured motorist coverage, and such coverage was not required by the No-fault Act. The named insured did, however, elect to make his personal injury protection coverage excess to this health insurance coverage in return for a reduced premium, thus taking advantage of the "coordination of benefits" provision of section 203(b) and (c) of the No-fault Act, 40 P.S. §1009.203(b) and (c).

Allstate contends that because the second vehicle was simply added to the existing policy issued pursuant to the No-fault Act and the named insured did not request or pay for any additional coverages including underinsured motorist coverage, the provisions of the MVFRL would not be applicable to either vehicle insured under the policy until the next renewal date after the effective date of the new law, or March 8, 1985.

Pennsylvania courts have consistently held that the MVFRL applies only to insurance policies issued or renewed on or after October 1, 1984, and the No-fault Act continues to apply to policies issued prior to that date until their next renewal. In *Borysowski v. State Farm Mutual Automobile Insurance Company,* 368 Pa. Super. 399, 534 A.2d 496 (1987), the court stated:

"We believe that it was the intention of the legislature to provide an orderly transition from the old statutory scheme to the new one. The express language of section 9 of Act 11 clearly indicates that the legislature intended that the new Financial Responsibility Law would only apply to insurance policies issued or renewed on or before October 1, 1984. In so providing, the legislature recognized that policies issued prior to October 1, 1984 would remain subject to the provisions of the repealed No-fault Act until such policies were renewed subsequent to the effective date of the Financial Responsibility Law." Also see *Soles v. Pennsylvania National Mutual Insurance Company*, 372 Pa. Super. 605, 539 A.2d 1360 (1988).

In *Government Employees Insurance Company v. Benton*, 859 F.2d 1147 (3d Cir. 1988), the court noted that "[t]he Pennsylvania legislature chose to enact a bright-line statute making the new law effective only to those policies issued or renewed after October 1, 1984." 859 F.2d at 1153. At least one Pennsylvania court of common pleas has concurred, *Allen v. Public Service Mutual Insurance Company*, C.P. of Allegheny County, no. GD 86-8762 (April 23, 1988).

Plaintiff argues in his motion for summary judgment that a determination that the MVFRL is not applicable to the additional vehicle would have the effect of extending the applicability of the No-fault Act beyond the date of its repeal while failing to recognize the effective date of the MVFRL. We do not agree. The language of the legislation consistently interpreted by the courts advises that the MVFRL is applicable only to policies issued or renewed on or after its effective date, and pre-existing policies issued pursuant to the No-fault Act would remain subject to the terms of that act until

their next renewal date. Thus, we concluded that the addition of a second vehicle did not alter that policy in any way.

It is undisputed that following his accident of December 9, 1984, plaintiff claimed and received personal injury protection benefits pursuant to the No-fault Act. Because of the "coordination of benefits" provisions in the policy, which had been elected by the named insured in return for a reduced premium, plaintiff's PIP benefits under the policy were excess of his private health insurance coverage. Nevertheless, Allstate was obligated under the terms of its policy for unlimited excess medical expenses resulting from the accident, consistent with the requirements of the No-fault Act that the insurer be obligated for unlimited medical expenses regardless of how long those expenses might go on or how much they might total. In addition, Allstate was obligated for work loss benefits up to a maximum of $15,000, again consistent with the requirements of the No-fault Act.

To permit plaintiff to collect underinsured motorist benefits from Allstate here would have the effect of permitting him to collect both no-fault benefits and MVFRL benefits under the same policy, clearly a result not intended by the legislature.

## CONCLUSION

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035. The entire record must be examined in the light most favorable to the non-moving party; the court's sole

function is to determine whether there is an issue of fact to be tried and not to decide issues of fact. *Perry v. Middle Atlantic Lumberman's Association,* 373 Pa. Super. 554, 542 A.2d 81 (1988).

Despite the rigorous standard applicable to such motions, plaintiff's claim is dependent upon statutory construction and the interpretation of the insurance policy. These are matters of law for the court. *Timbrook v. Foremost Insurance Company,* 324 Pa. Super. 384, 471 A.2d 891 (1984).

We found the policy remained unchanged (September 8, 1984 through March 8, 1985). The renewal date not having been changed or extended this is a case simply of an amendment to a pre-existing policy. We found that the insured paid for and received no-fault benefits and that the policy continued as a no-fault policy until its next renewal date. This is expressly contemplated by the legislation accomplishing the repeal of the No-fault Act and the enactment of the MVFRL.

## ORDER

And now, April 5, 1990, upon consideration of the motions for summary judgment filed by the parties hereto, it is hereby ordered and decreed that defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and judgment is hereby entered in favor of defendant, Allstate Insurance Company, and against plaintiff, John F. Stratton.