# United Services Automobile Association v. Rieker

C.P. of Blair County, no. 2002 GN 4721.

*Stephen J. Poljak,* for plaintiff.
*Joseph J. Nypaver,* for defendant.

KOPRIVA, *J.,* February 8, 2005—

## PROCEDURAL HISTORY

Plaintiff filed a complaint commencing this declaratory judgment action on November 15, 2002. In the complaint, plaintiff seeks a declaration that defendant is not entitled to first-party benefits under the terms of an insurance policy issued by United Services Automobile Association (USAA) to defendant's mother, Theresa Rieker.

A related claim regarding plaintiff and defendant underwent extensive mediation and, by agreement, the parties placed this matter on hold pending the mediation results. Eventually, the parties indicated their desire to resume both matters through the litigation process. We appreciate the parties' sincere efforts to find their own resolution to these cases.

On October 4, 2004, plaintiff filed a motion for summary judgment and a supporting brief. Defendant filed

her brief in opposition to the motion on October 29, 2004.[1]

On November 10, 2004, the court held a trial by court on this matter, at which time defendant filed proposed findings of fact, followed by defendant's proposed conclusions of law and supplemental proposed findings of fact, December 20, 2004. Plaintiff then filed its proposed findings of fact and conclusions of law filed December 22, 2004. We find all outstanding issues in this case ripe for disposition.

## FACTUAL HISTORY

Defendant was involved in a motor vehicle accident on July 4, 2000. As a result of the accident, defendant suffered various injuries for which medical treatment was necessary. During this time defendant resided with her mother, Theresa Rieker.

At the time of the accident, the automobile defendant was operating was covered under an automobile policy issued by USAA Casualty Insurance Company (USAA CIC), a wholly owned subsidiary of the plaintiff. The USAA CIC policy provided first-party benefit-medical expense coverage in the amount of $10,000. Theresa had

---

1. The court entered its decision regarding the motion for summary judgment on November 9, 2004, a day before the scheduled trial by court, granting partial summary judgment to the plaintiff. At trial, counsel requested that the court vacate its summary judgment decision so that appeal periods coincide between the trial and the motion for summary judgment. The court vacated its summary judgment opinion and order dated November 9, 2004, and ruled that the court shall enter rulings of law and fact on all matters upon receipt of briefs.

a USAA policy which provided first-party benefits-medical expense coverage in the amount of $100,000. As a result of the medical treatments she received, defendant incurred medical expenses, which were submitted to USAA CIC for payment under that policy's medical expense coverage. The amount of defendant's medical expenses exhausted the $10,000 medical expense coverage under the USAA CIC policy.

Following the exhaustion of the USAA CIC medical expense coverage, defendant made a claim for medical expense coverage under the USAA policy issued to her mother, Theresa. Plaintiff started paying medical bills for defendant as an insured under Theresa's policy on June 1, 2001. In October or November 2002, plaintiff, through legal counsel, reviewed the issue of defendant's entitlement to first-party benefits under her mother's policy and determined that its initial decision to provide defendant with first-party benefits under Theresa's policy was made in error. USAA advised defendant of its determination and advised that no further coverage would be provided. Thereafter, USAA filed the instant declaratory judgment action on November 15, 2002.

## DISCUSSION

Plaintiff argues that defendant is not entitled to first-party benefits under the USAA policy issued to Theresa because defendant is not at the first level of priority under the Pennsylvania Motor Vehicle Financial Responsibility Act §1713. Defendant propounds that plaintiff has relied on case law that has been expressly overruled regarding priority payment of first-party benefits. Defendant also argues that the priority provision of the

USAA policy only comes into play if there is another *insurer* as opposed to another *policy.* Defendant further avers that USAA and USAA CIC acted as one entity or one insurer, which would cause the priorities of policies section of the USAA policy to not take effect. Plaintiff asserts that it does not matter if USAA and USAA CIC are the same or separate insurers because neither under the USAA policy priorities of policies provision, nor under the Act, would plaintiff be required to pay the defendant first-party benefits as a matter of law.

## *The Act*

Section 1713 of the Act indicates that a person who suffers an injury arising out of the use of a motor vehicle shall recover *first-party benefits* against the applicable insurance coverage in the following order of priority:

"(a)

"(1) For a named insured, the policy on which he is a named insured.

"(2) For an insured, the policy covering the insured.
. . .

"(b) Multiple sources of equal priority.—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible . . . ."

Plaintiff points the court to *Laguna v. Erie Insurance Group,* 370 Pa. Super. 308, 536 A.2d 419 (1988), to explain the meaning of section 1713 of the Act.[2] Plaintiff

---

2. The Act at section 1717 is not discussed because it is inapplicable to the case currently before the court. Section 1717 only applies

looks to *Laguna* to support their proposition that you cannot collect first-party benefits against insurers at different levels of priority. Defendant avers that *Laguna* is overruled by *Neilson v. Nationwide Insurance Company,* 738 A.2d 490 (Pa. Super. 1999). We note *Neilson* states "We, in this en banc decision . . . expressly overrule . . . that portion of *Laguna* discussing *stacking of first-party benefits." Id.* at 493. (emphasis added) Since the en banc Superior Court only expressly overruled the section of *Laguna* discussing the *stacking of first-party benefits,* the portion of *Laguna* discussing the order of priority of first-party benefits is still in force and effect. In fact, the *Laguna* court stated:

"The provision of section 1713(b) regarding procedures to be followed in the event of multiple sources of coverage is limited to sources of equal priority. Since the statute explicitly treats the issue of multiple sources of coverage among insurers of equal priority, its silence regarding insurers at different priority levels indicates that contribution in this context is not an issue. The logical interpretation of the limitation of section 1713(b) to insurers at an equal priority level is that *insureds are not entitled to benefits from multiple sources at different priority levels." Laguna,* 370 Pa. Super. at 313, 536 A.2d at 421. (emphasis added)

---

to prohibit the stacking of first-party benefits of multiple motor vehicle policies. For example, if the defendant were asking for $110,000, instead of $90,000, then section 1717 would prohibit the adding of the two policies together to reach the $110,000. See *Neilson v. Nationwide Insurance Company,* 738 A.2d 490 (Pa. Super. 1999).

In this case, defendant was covered by the USAA CIC policy as a named insured, which would make USAA CIC the first level of priority for payment of first-party benefits under the Act, section 1713(a)(1). Defendant would also be covered under the USAA policy issued to Theresa as an insured relative. As an "insured," defendant would then hold the USAA policy as a second level of priority policy under the Act, section 1713(a)(2).

Therefore, applying the *Laguna* reasoning, the defendant would not be entitled to first-party benefits of the USAA policy because defendant is insured through this policy at the second level of priority under the Act. The ruling in *Neilson* only applies to first-party benefit claims made against one of several carriers of equal priority under the Act, section 1713. *Neilson,* 738 A.2d at 493. Since in this case defendant has unequal levels of priority in relation to the two policies, *Neilson* is inapplicable.

### *USAA Policy, Priorities of Policies Provision*

The USAA policy provides "We will pay the first-party benefit in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher priority level . . . . The priority level is:

"First: The insurer providing benefits to the covered person as a named insured.

"Second: The insurer providing benefits to the covered person as a family member who is not a named insured under another policy providing coverage under the Act . . . ." USAA policy, Part B—First-party benefit, priorities of policies provision.

Under the priorities provision, the insurer at the first priority level would be USAA CIC since the defendant is a named insured in that policy. The USAA policy would not be at the second level of priority because the defendant, although covered as a family member, is a *named insured* under another policy, USAA CIC, providing coverage under the Act. As a result, USAA is not a second level priority insurer pursuant to the contract language, "family member who is not a named insured under another policy . . . ."

Therefore, under this USAA policy, the plaintiff would not have to pay first-party benefits to the defendant because the USAA CIC policy was at the first level of priority and the provision clearly states that plaintiff will not pay if there is another insurer at a higher priority level.

The court does not need to address whether USAA and USAA CIC are one entity because under the Act and the USAA priorities of policies provision, plaintiff would not be responsible for first-party benefits.

### Equitable Estoppel and Waiver

Defendant argues that the doctrine of equitable estoppel applies because her medical expenses were paid by plaintiff for almost a year and a half, plaintiff never issued a reservation of rights letter to defendant regarding payment, and defendant relied on plaintiff's conduct and act of providing coverage when making decisions regarding her health insurance, which resulted in its lapse. Defendant further avers that the affirmative defense of waiver applies because of the willful and conscious failure of USAA to issue a reservation of rights letter.

"The elements of estoppel are: (1) misleading words, conduct or silence by the party against whom the estoppel is asserted, (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel, and (3) no duty of inquiry on the party seeking to assert estoppel. If all the foregoing are present, a court of equity may prevent the party who misled the other from denying his words or conduct." *Stolarick v. Stolarick,* 241 Pa. Super. 498, 509, 363 A.2d 793, 799 (1976).

Without the element of reliance on some conduct of the party sought to be estopped, prejudice, an essential element of estoppel, cannot be proved. 14 Summ. Pa. Jur. 2d Insurance §10:3. To demonstrate the requisite prejudice, the insured must show that he or she acted, or refrained from acting, in reliance on some conduct of the insurer. *Id.* "It is well-established . . . that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence." *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975).

Defendant argues that the first element of equitable estoppel, misleading words, conduct or silence by the party against whom the estoppel is asserted, is satisfied by defendant's exhibit 1, the payment log, showing the payment of first-party medical bills for the period of June 1, 2001 through November 25, 2002. Also, defendant avers that exhibits 3, 4 and 5 constitute further proof that the decision to provide coverage by USAA was made only after a review of the terms of the policy and legal analysis was performed by USAA's in-house counsel. Defendant has proven through the above that plaintiff

engaged in misleading words and conduct in regard to payment of defendant's medical bills.

We now turn to the second element which states unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel must be present for equitable estoppel to apply. Defendant argues that this element is established by exhibit 7, a fax wherein USAA accepted and confirmed its duty of coverage to defendant's health insurer in 2001. Defendant further maintains that defendant's testimony at trial also establishes reasonable/justifiable reliance on USAA's conduct.

Upon review of the trial transcript, the evidence establishes that the decision to allow defendant's Educators Mutual insurance policy to lapse was actually made by her employer and not defendant herself. Moreover, defendant did not pay the premiums for either the Educators Mutual policy or the UPMC policy that she enrolled in after the lapse of Educators Mutual, but rather her employer did so. Defendant testified that the Educators Mutual policy lapsed at the end of 2001. Following the lapse of the policy, defendant obtained alternate health care insurance provided by UPMC in the early months of 2002. Defendant went on to testify that she agreed with the decision to allow the Educators Mutual policy to lapse, but does not state a reason why she obtained UPMC health insurance a few months later. If defendant believed that she did not need the Educators Mutual coverage because she had USAA coverage, it is reasonable to assume that the same belief should have been present when her employer subscribed to the UPMC policy.

USAA did not advise the defendant of its decision to cease payments of first-party benefits under Theresa's policy until October 2002. By that time the UPMC policy had been in place for several months. Evidently, the defendant believed that she needed the UPMC policy during the time that she was receiving benefits from USAA. It is apparent from the facts of this case that the decision to allow the Educators Mutual policy to lapse and obtain the UPMC policy had nothing to do with the coverage provided at that time by USAA under Theresa Rieker's policy. There is no clear evidence that defendant acted or failed to act in reliance of plaintiff's payment of first-party benefits under Theresa's policy. Therefore, the elements of equitable estoppel are not met and defendant's argument fails for lack of reasonable reliance.

An implied waiver exists only when the elements of estoppel are present. *Id.* One who sets up an implied waiver must show that he or she changed their position in reliance on the insurance company's act of waiver. *Sack v. Glens Falls Insurance Co.,* 360 Pa. 424, 61 A.2d 852 (1948). The doctrine can only be invoked when the conduct of the company has induced action or reliance. *Id.* "An initial payment by an insurer of an insured's claim does not constitute a waiver of the insurer's right to terminate payments after a counseled review, where the case is still active at the time of cessation of the payments . . . ." 14 Summ. Pa. Jur. 2d Insurance §10:28.

An implied waiver does not exist in this action because the elements of estoppel are not present.

An expressed waiver does not exist because mere payment of first-party benefits by USAA to defendant for

one and a half years does not constitute an expressed waiver. Also, defendant's reliance on exhibit 6 to show evidence of an expressed waiver is not compelling. Exhibit 6, a letter dated June 26, 2001, merely states "[a]t this time there are no bills being disputed by USAA." We determine this document alone does not rise to the level of an expressed waiver of plaintiff's right to challenge their continued payment of first-party benefits to defendant under Theresa's policy.

## *Promissory Estoppel*

Promissory estoppel is defined as a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person, and which does induce such action or forbearance that is binding, and there is no other way to avoid injustice but to enforce the promise. Restatement (Second) of Contracts, section 90, adopted in *Travers v. Cameron County School District,* 117 Pa. Commw. 606, 544 A.2d 547 (1988).

As previously discussed in our analysis of reliance for estoppel purposes, defendant has similarly not proven that there was action or forbearance by her based upon plaintiff's payment of first-party benefits, under the USAA policy for a year and a half. Therefore the doctrine of promissory estoppel does not apply.

## *Laches*

Defendant argues that the doctrine of laches applies because USAA started providing coverage for defendant's continuing medical expenses only after it analyzed

the policy in question and conducted a thorough legal analysis. Defendant states if USAA had a legitimate question of its rights and obligation under the policy, it should, and could, have raised those issues a year and five months earlier, before USAA started paying for defendant's continuing medical expenses.

Laches will apply when one is guilty of lack of due diligence in failing to institute or prosecute his proceedings. *Klein v. Walton,* 413 Pa. Super. 150, 156, 604 A.2d 1064, 1067 (1992). "[I]n order to prevail on an assertion of laches, respondents must establish: (a) a delay arising from petitioner's failure to exercise due diligence; and, (b) prejudice to the respondents resulting from the delay." *In re Estate of Scharlach,* 809 A.2d 376, 382-83 (Pa Super. 2002). Prejudice means a party must change his position to his detriment in order to invoke this doctrine. *Id.* at 383. Laches should not be applied in favor of a person who has not taken required action on his own. *Id.* The question of whether a claimant is barred by laches is factual and must be determined by an examination of the circumstances. *Tredyffrin-Easttown School District v. Valley Forge Music Fair,* 156 Pa. Commw. 178, 186, 627 A.2d 814, 818 (1993).

Since we determine defendant has not proven that she changed her position (*i.e.* reliance) to her detriment, laches does not apply.

## Conclusion

In applying either the Act or the USAA policy priorities of policies provision, the defendant is not entitled to first-party benefits paid by the plaintiff. Estoppel, waiver,

and laches do not apply to the facts of this case because all of these legal theories rest on reliance by the promisee based on action of the promisor, and there is simply insufficient evidence that defendant relied to her detriment on the actions of plaintiff.

For all of these reasons, we enter the following:

ORDER

And now, February 8, 2005, it is ordered, directed and decreed, plaintiff has no legal or contractual obligation to provide first-party benefits coverage to defendant under the policy no. *****-**-***-****-* issued by plaintiff to defendant's mother, Theresa Rieker.